## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

------------------------------------------------------------ x

THOMAS C. BOSCARINO,　　　　　　:
Chapter 7 Trustee,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:　　Case No.: 3:15-cv-00843 (AWT)
　　　　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
PEOPLE'S UNITED BANK, N.A.,　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.　　　　　:
------------------------------------------------------------x　　September 18, 2015

## DEFENDANT PEOPLE'S UNITED BANK, N.A.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT FOR LACK OF JURISDICTION <u>AND FAILURE TO STATE A CLAIM</u>

Defendant People's United Bank, N.A. ("Defendant" or "PUB") submits the following memorandum of law pursuant to D. CONN. L. CIV. R. 7 in support of PUB's motion to dismiss with prejudice the complaint ("Complaint") filed by Thomas C. Boscarino, the Chapter 7 Trustee ("Plaintiff Trustee" or "Trustee"), commenced as a non-core proceeding arising out of a long pending bankruptcy matter in this District because subject matter jurisdiction is wholly lacking pursuant to FED. R. CIV. P. 12(b)(1) and, separately, for failure to state a claim pursuant to FED R. CIV. P. 12(b)(6).

### <u>PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT</u>

The Complaint manufactured by the Trustee against PUB in this case contains just two counts, both asserting conversion, one under the common law and the second under the Uniform Commercial Code ("UCC").  The Trustee claims that the case is related to the Chapter 7 bankruptcy case of Whitehall Avenue, LLC ("Debtor") pending in  the U.S.

**Oral Argument Requested**
**Testimony Not Required**

Bankruptcy Court for the District of Connecticut.  The Chapter 7 case was originally filed as a Chapter 11 case on May 12, 2012 and converted to a Chapter 7 case on October 6, 2014.  *In Re Whitehall Avenue,* LLC, 12-21184 (D. Conn.) (AHWS).  PUB is not involved with the Debtor's bankruptcy case that has been pending for the last four years (including the Debtor's prior Chapter 11 filing, *see infra*).  PUB's only connection is that of happenstance, it was the depository bank of the Debtor and its insurance adjuster, United Adjusters, LLC ("United Adjusters").

The wrongdoers here are the Debtor, Debtor's Principal and United Adjusters.  Indeed, the Trustee's claims arise mainly out of the United Adjusters' account and not the Debtor's account with PUB.  As set forth below, Debtor and United Adjusters wrongfully deposited checks issued by a property casualty insurer mainly into the United Adjusters' account while bypassing the court-monitored Debtor's account, in direct contravention of their fiduciary obligations owed to the estate.  This wrongdoing caused the United States Trustee to file a motion to convert the case to Chapter 7.  [BKR Docket No. 367, a true and correct copy of which is annexed hereto as Exhibit A].  Plaintiff Trustee is now attempting to recover from an innocent third party depository institution (Defendant PUB) by an assignment of a secured creditor's claims because the Trustee has no direct right of action against PUB.  *See infra*.

In commencing this action as a non-core proceeding Plaintiff Trustee attempts to retreat from standing in the Debtor's shoes as he must as the Trustee, instead don the title of "assignee" of just one creditor of the Debtor and then selectively pursue the alleged claims of that single creditor for monetary benefit largely to the creditor and specific and unique only to that individual creditor, entirely separate from the estate.

As set forth below, the combined settled precedents of the United States Supreme Court and the Second Circuit mandate that the Plaintiff Trustee cannot do any of what the Trustee purports to do with the gerry-rigged assignment from one creditor and then bootstrap the "assignment" into claims against PUB.  The alleged assignment right as publicly filed on the docket of the U.S. Bankruptcy Court in the bankruptcy proceeding is not only partial and not absolute, *but recites an assignment of rights purportedly to empower the Trustee to pursue claims of one creditor for the monetary benefit of the assignor-creditor independent of the estate.*  Federal law prohibits such convoluted action to be undertaken by a trustee, leaving the Plaintiff Trustee in this non-core civil action without standing.

Established Supreme Court and Second Circuit law compel dismissal with prejudice by reason of an incurable lack of subject matter jurisdiction before this Court pursuant to FED. R. CIV. P. (12)(b)(1).   In short, the Plaintiff Trustee's failed attempt to conjure up standing and thereby create subject matter jurisdiction where none exists must fail as a matter of law.  The Complaint must be dismissed with prejudice for this reason alone.

As additional but separate grounds for dismissal (and linked closely to the Trustee's failed basis for standing), are Plaintiff's defective state law claims, which are equally unavailing and must likewise fail as a matter of law.  Connecticut law does not recognize as valid assignment of an intentional tort claim such as the conversion alleged in this case.  In addition, Connecticut common law on conversion, assignment of tort claims and the UCC as adopted in Connecticut bar the Plaintiff Trustee from his contrived pursuit of the two-count conversion Complaint because the purported "assignor" never had an ownership interest in the three (3) checks at issue.  Accordingly, dismissal with prejudice of both counts is also

separately warranted under FED. R. CIV. P. 12(b)(6) for failure to state a claim as a matter of state law.

### Background Facts Relevant to Dismissal

The limited factual allegations and background as pertinent to PUB's motion are as follows.[1]

Ittleson Trust 2010-1 ("Ittleson") is alleged to have acquired a mortgage and security interest on real property known as 9 Whitehall Avenue, Mystic, Connecticut (the "Property").  *See* Complaint at ¶¶ 11, 16 [Docket No. 1].  The Debtor), a limited liability company, owned the Property.  *Id.* at ¶ 11.

In October 2014, when the Bankruptcy Court converted the Chapter 11 case to a Chapter 7 proceeding, Plaintiff was appointed Chapter 7 Trustee at the same time.  *See* Complaint at ¶¶ 7-9.  This case was the Debtor's second Chapter 11 bankruptcy case, the first having been filed in January, 2011 and dismissed in February, 2012 shortly before being re-

---

[1] Plaintiff Trustee's Complaint incorporates by reference and otherwise relies heavily upon documents in the related bankruptcy proceeding, including:  (i) the Compromise and Settlement Agreement ("Settlement Agreement") by and between the Trustee and the secured creditor Ittleson, as well as the Bankruptcy Court order approving the Settlement Agreement; (ii) a commercial property insurance policy related to issuance of checks at issue herein; and (iii) three (3) checks the insurer issued to Debtor and the public adjuster, United Adjusters.  (Complaint, Docket No. 1 at ¶¶ 1, 17-18, 24, 30 and 36).  Pleadings include not just the four corners of the complaint, but also "'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)); *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (same); *see also* FED. R. CIV .P. 10(c).  "Even where a document is not incorporated by reference, the Court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' and thus renders the document 'integral' to the complaint." *Chambers,* 282 F.3d at 153 (quoting *Int'l Audiotext,* 62 F.3d at 72).  Therefore, extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint.  *DeLuca v. AccessIT Group, Inc.,* 695 F. Supp.2d 54, 59-60 (S.D.N.Y. 2010).  This Court's ability to consider matters beyond the Complaint is even greater with respect to PUB's dismissal with prejudice based on FED. R. CIV. P. 12(b)(1) lack of subject matter jurisdiction.  *See infra.*

filed in May, 2012.  *In re Whitehall Avenue*, LLC, 11-50100 (D. Conn.) (AHWS).

### THE DEBTOR AND ITS INSURANCE ADJUSTER UNITED
### ADJUSTERS, LLC OBTAIN THE CHECKS FOR THEMSELVES AND OTHERS

The United States Trustee's Motion to Convert alleges a panoply of misconduct committed by the Debtor and United Adjusters as public adjuster in connection with funds received from the Property insurer (Scottsdale Insurance).  A true and correct copy of the United States Trustee's Motion to Convert is annexed hereto as Exhibit A.  The checks issued by Scottsdale included the three (3) checks that are the subject of this action.  The Chapter 11 Debtor never disputed the allegations contained in the United States Trustee's Motion to Convert, and the case was converted to Chapter 7 without any opposition.  *See Exhibit A*; *see also* BKR Docket No. 377.

The Trustee's Complaint presents a fairly thin statement of facts and avoids the expansive wrongdoing set forth in the United States Trustee's Motion to Convert.  *Id.*  The Trustee's Complaint simply alleges that the Trustee received an assignment of rights from Ittleson.  The Complaint further alleges that "the Debtor sustained significant damage to the Property *and other harm* caused by Super Storm Sandy" in October 2012.  Complaint at ¶ 21 (emphasis supplied).  On January 22, 2013, the insurer issued a check in the amount of $100,000.  *Id.* at ¶ 24. On May 7, 2013 the insurer issued a check in the amount of $500,000.  *Id.* at ¶ 30.  On November 18, 2013 the insurer issued a check for $514,284.30. *Id.* at ¶ 36.  The Complaint alleges that the checks were presented by United Adjusters and/or the Debtor for deposit in their accounts with PUB without the signature of Ittleson, *Id.* at ¶¶ 27, 33 & 39, and the Trustee standing in Ittleston's shoes has claims sounding in conversion against PUB.

The Trustee's Motion to Approve the Compromise and Settlement Agreement

elaborates significantly on misconduct by the Debtor and United Adjusters, including that:  (i) Debtor employed United Adjusters without bankruptcy court approval; (ii) Debtor failed to obtain bankruptcy court authority to compromise and settle claims with the insurer adjusted by United Adjusters; and (iii) United Adjusters used proceeds to pay itself various commissions and remitted to Debtor net proceeds where Debtor, in return, improperly used funds for various purposes.  [BKR Docket No. 458 at 10, 14-15].  As represented to the Bankruptcy Court, the net effect of such misconduct gives rise to Plaintiff Trustee "to recover amounts based on various causes of action against the Debtor's members, [and] United Adjusters[.]"  *Id.* at ¶ 17. These statements of the Trustee are judicial admissions.[2]

By motion dated January 16, 2015, the Plaintiff Trustee sought a fast-tracked order from the Bankruptcy Court requesting, *inter alia,* that the Court approve a compromise and settlement of a dispute with Ittleson by virtue of certain secured rights of Ittleson and within that settlement that certain rights of Ittleson be assigned to the Plaintiff Trustee.  [BKR Docket No. 458, a true and correct copy of which is annexed hereto as Exhibit B].  The very same day, Plaintiff Trustee moved *ex parte* to expedite the hearing and shorten and limit notice and service of its motion and the hearing to approve the settlement containing the assignment so that the requested assignment could be immediately approved on an

---

[2] The United States Trustee's Motion to Convert the Debtor's bankruptcy case from a Chapter 11 to a Chapter 7 case and Ittleson's own similar Motion to Convert both set forth a litany of wrongdoing by the Debtor, United Adjusters and their agents with respect to the checks, and the collection and use of the insurance proceeds in the checks.  [BKR Docket Nos. 279, 346 & 367].  Various filings of United Adjusters in which it attempts to explain away its involvement with the checks, also confirm that United Adjusters and the Debtor paid themselves and/or took the funds in the checks for themselves and others.  [BKR Docket Nos. 354, 357 & 374].  Yet, the Trustee is here trying to manufacture a claim against PUB by standing in the shoes of Ittleson (a creditor) and not the Debtor.

exceedingly abbreviated schedule.  [BKR Docket No. 459, a true and correct copy of which is annexed hereto as Exhibit C].

The public docket of the U.S. Bankruptcy Court of the Debtor's case referenced and alleged in the Complaint (*e.g.*, Complaint ¶¶ 5, 7-9) on PACER, reveals that the Trustee so rushed his approval request that he filed the settlement papers with the Bankruptcy Court on Friday, January 16, 2015, before a long holiday weekend with a federal holiday on Monday, January 19, 2015 (Martin Luther King, Jr. Day), on which the Court was closed.  [BKR Docket Nos. 458, 459 & 460].  Thus, the Trustee's hasty timing of his filings effectively curtailed the approval and notice process of the settlement approval even further.

After not receiving any opposition, the Bankruptcy Court allowed the compressed schedule and limited notice and service of the hearing on January 16, 2015 [BKR Docket No. 460, a true and correct copy of which is annexed hereto as Exhibit D] and on January 22, 2015 granted the requested approval of the Settlement Agreement – a mere three business days after the Trustee's filing and a mere six (6) calendar days later.  [BKR Docket No. 468, a true and correct copy of which is annexed hereto as Exhibit E].

A close review of the Order permitting the settlement embedded with the assignment of certain Ittleson rights as secured creditor is essential, as such partial assignment of certain (but not all) rights is the sole basis upon which Plaintiff Trustee alleges two (2) counts of conversion in the Complaint against PUB, thereby attempting to invoke (impermissibly, as set forth *infra)* this Court's subject matter jurisdiction.

**THE SETTLEMENT AGREEMENT WITH ITTLESON IS A PARTIAL ASSIGNMENT WITH ITTLESON RETAINING RIGHTS AND CLAIMS AS A CREDITOR IN THE BANKRUPTCY COURT <u>AS WELL AS A 50% INTEREST IN THE CLAIMS ASSIGNED TO THE TRUSTEE</u>**

The Settlement Agreement rushed forth by the Trustee on short notice to the

Bankruptcy Court reads as follows:

> Ittleson is hereby allowed a secured claim in this bankruptcy case for that portion of the Ittleson Proof of Claim (the "Ittleson Allowed Secured Claim as to Loss/Policy/Proceeds") with respect to only (i) the Loss; (ii) the Policy; and/or (iii) their proceeds, and any and all claims and causes of action of any kind whatsoever arising from, or related to, or in connection with, any such Loss, Policy or their proceeds, as the case may be, *in an amount equal to the distributions paid to it pursuant to this paragraph,* **and shall receive on account of such allowed secured claim distributions from the Estate equal to fifty percent (50%) of the gross proceeds hereafter recovered by the Trustee and/or the Estate** *on account of (i) the Loss; (ii) the Policy arising from the Loss; and/or (iii) their proceeds, and any and all claims and causes of action of any kind whatsoever arising from, or related to, or in connection with, any such Loss, Policy or their proceeds, as the case may be. In the foregoing sentence, "gross proceeds" shall mean the gross amount actually received by the Trustee and/or the Estate before payment of any amount due by the Estate including, but not limited to, the Trustee's commission, permitted attorneys' fees and expenses incurred by the Estate, and any other permitted Chapter 7 administrative expenses.*

[BKR Docket No. 468, Exhibit E annexed hereto at 1 and ¶ (1) (emphasis supplied)].

The Settlement Agreement provides that the Trustee and Ittleson are settling

only that portion of the Ittleson Proof of Claim with regard to Ittleson's interest in the Policy

and its proceeds.  The UCC conversion claims asserted in this action are not within the scope of

the Ittleson Partial Assignment.  The Settlement Agreement then provides for a large and

ambiguous carve out from the rights assigned to the Trustee that arguably swallow all of the

rights assigned:

[Ittleson will retain] all of Ittleson's claims, rights, remedies and recourses of any kind whatsoever against the Estate as evidenced by the Ittleson Proof of Claim other than with regard to only the Ittleson Allowed Secured Claim as to Loss/Policy/Proceeds… and Ittleson's claims, rights, remedies or recourses of any kind whatsoever against any of the Debtor, the Trustee, the Estate, any guarantor of the Debtor or any other party, person or entity of any kind whatsoever other than with regard to the Trustee and the Estate solely arising in connection with the Assigned Rights and Interests, subject, however, to the terms and provisions of, and the obligations and agreements of the Estate and the Trustee set forth in, this Motion and this Settlement with regard to such Assigned Rights and Interests and/or the Ittleson Allowed Secured Claim as to Loss/Policy/Proceeds, as the case may be. . .

See Exhibit E annexed hereto at ¶ 6.

The Motion to Approve the Settlement Agreement (Exhibit B annexed hereto) alleges that Ittleson "upon information belief" is the holder of the Note and Mortgage secured by the hotel Property.  The Ittleson Proof of Claim asserts that Ittleson is the holder of the Note and Mortgage by virtue of an assignment of a mortgage endorsed in *blank*.[3]  The public docket of the state court underlying foreclosure action indicates otherwise.  However, on January 13, 2015, an entity referenced as "Ittleson Whitehall Hotel LLC" was substituted as the party plaintiff in the underlying foreclosure action.  If the state court pleadings are correct, Ittleson Whitehall Hotel LLC, not Ittleson, was the real party in interest when the Trustee rushed the Settlement Agreement through the expedited court approval process, leaving the Trustee without any rights to purportedly assert in this action.

The Trustee defines the term "Property" in the Complaint, also as it is defined in

---

[3] The issue of whether Ittleston ever received a valid assignment of the Note has never been adjudicated in any judicial proceeding, and PUB reserves its rights to challenge the chain of assignment and Ittleston's status as the assignee of CIT and the holder of the underlying Note.

the Ittleson partial assignment (the "Ittleson Partial Assignment"), *supra* Complaint at ¶ 11. Plaintiff Trustee similarly defines the term "Policy" in the Complaint, also as referenced in the Ittleson Partial Assignment, *supra. Id* at ¶ 18.  In like manner, Plaintiff Trustee defines "Loss" in the Complaint as referenced by the Bankruptcy Court, *supra. Id* at ¶ 10.

As set forth below, the terms of the Ittleson Partial Assignment and the reservation of rights to commence other claims violate established United States Supreme Court precedent, thus warranting 12(b)(1) dismissal.  The monetary claim of Ittleson's entitlement to fifty-percent (50%) of proceeds, notwithstanding the supposed assignment to the Plaintiff Trustee, collected on the purported assignment of claims relating to the "Loss/Policy/Proceeds" is contrary to well settled law in the Second Circuit holding that a bankruptcy trustee lack standing to bring claims on behalf of creditors.

The Ittleson Partial Assignment states that the Plaintiff Trustee cannot "commence any litigation or legal action, or take any other action or proceeding of any kind whatsoever in the name of Ittleson[.]"  [BKR Docket No. 468, Exhibit E at ¶ (6)].   Furthermore, among other defects, the settlement between Ittleson and Plaintiff Trustee make undeniably clear the Ittleson Partial Assignment is precisely that – partial.  Ittleson releases "claims and causes of action against the Trustee with respect to *only* [emphasis supplied] (i) the Loss; (ii) the Policy; and/or (iii) their proceeds…*provided, however* [emphasis in original], that nothing contained in the foregoing or otherwise shall release, or be deemed to release, in any way whatsoever or the Estate from any of the obligations or agreements of any kind whatsoever of the Trustee or the Estate set forth in this Settlement." *Id.* at ¶ (3).  The narrow parameters of the Ittleson Partial Assignment and release of claims exchanged in connection therewith are

further detailed in the operative document.  *Id.* at ¶¶ (4)-(5).

As to the sharing of recovery proceeds under the Ittleson Partial Assignment, it is beyond question that Plaintiff Trustee in this action is prosecuting claims for the monetary benefit of Ittleson, an individual creditor, not the estate.  Significantly, "Ittleson is hereby allowed a secured claim in [the] bankruptcy case…in an amount equal to the distributions paid to it pursuant to this paragraph, and shall receive on account of such allowed secured claim distributions from the Estate equal to fifty percent (50%) of the gross proceeds hereafter recovered by the Trustee…." [BKR Docket No. 468, Exhibit E at (1)].  Moreover, "'gross proceeds' shall mean the gross amount actually received by the Trustee and/or the Estate before payment of any amount due by the Estate including, but not limited to, the Trustee's commission, permitted attorneys' fees and expenses incurred by the Estate, and any other permitted Chapter 7 administrative expenses."  *Id.*

Upon inspection, the assignment and the "sharing" of recovery proceeds between Plaintiff Trustee and Ittleson as creditor pursuant to the Ittleson Partial Assignment is most improper.  Not only is the Plaintiff Trustee prosecuting claims on behalf of a single creditor for alleged harm to it and no other creditor, but the "sharing" is so favorable to Ittleson as the creditor (guaranteed 50% of gross proceeds recovered by the Plaintiff Trustee), that it appears little, if any funds, would remain to even come into the estate.  After Ittleson's 50% recovery is subtracted and the remaining sum recovered is netted of counsel's one-third take for attorneys' fees and expenses, there would be little left for the estate.[4]   Accordingly,

---

[4]  The Plaintiff Trustee's counsel in this case will receive payment of one-third (33%) of the total gross amount recovered.   [BKR Docket Nos.  475 & 493].  Several months later, and soon after the Trustee filed this action on June 2, 2015, Ittleson and the Plaintiff Trustee changed their original arrangement in one

the main beneficiaries of this Ittleson Partial Assignment appear to be Ittleson, of course, and the Plaintiff Trustee and his counsel. *Id.*

The lopsided benefit, so clearly more monetarily beneficial to the lone creditor Ittleson by Plaintiff Trustee's proposed effort to prosecute the Ittleson Partial Assignment of claims, highlights that this civil action involves in the main, and can only anticipate, the Plaintiff Trustee prosecuting the claims of a single creditor for that creditor alone.

The law is clear and prohibits such gerrymandered claims and, therefore, the Complaint must be dismissed with prejudice.

<u>ARGUMENT IN SUPPORT OF DISMISSAL</u>

I.    THE SETTLEMENT WITH ITTLESON IS A PARTIAL ASSIGNMENT FOR ONE CREDITOR ONLY AND IT DICTATES THAT ITTLESON WILL MONETARILY BENEFIT SEPARATE FROM THE ESTATE THROUGH PLAINTIFF TRUSTEE'S PROSECUTION OF THE "ASSIGNED CLAIMS," THUS DEFEATING PLAINTIFF <u>TRUSTEE'S STANDING AND THE SUBJECT MATTER JURISDICTION OF THIS COURT</u>

Standing is jurisdictional under Article III of the United States Constitution. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471-76 (1982).  Standing "is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court."  *Shearson Lehman Hutton, Inc. v. Wagoner,* 994 F.2d 114, 117 (2d Cir. 1991) (Cardamone, C.J.) (applying Connecticut law in bankruptcy, affirming that trustee lacked standing to bring claims belonging to creditors) (generally, *"Wagoner"*)); *see Picard v. HSBC Bank PLC* , 454 B.R. 25 (S.D.N.Y. 2011) (*"Picard I"*), *aff'd,* 732 F.3d 54 (2d Cr. 2013), *cert. denied*, 134 S.Ct. 2895 (2014).  Connecticut precedent "observed that the *Wagoner* rule has 'considerable persuasive power' further

---

respect, to call for Ittleson to pay 50% of the Trustee's counsel's one-third contingency fee out of its 50% share of the gross recovery.   [BKR Docket Nos. 554 & 562].

demonstrating its validity under Connecticut law." *In re Stanwich Financial Serv. Corp.,* 317 B.R. 224, 229 (D. Conn. 2004) (Shiff, B.J.) (quoting *Reider v. Arthur Andersen, LLP.*, 47 Conn. Supp. 202, 213 (Conn. Super. 2001)).

"Rule 12(b)(1) challenges to subject matter jurisdiction may contest either the facial sufficiency of the pleadings in the Complaint or the existence of subject matter jurisdiction in fact. *Dow Jones & Co., Inc. v. Harrods, Ltd*., 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002). "In a facial challenge, the court accepts as true the uncontroverted factual allegations in the complaint." *Id.*  Importantly, in resolving a factual challenge to subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings. *See Makarova,* 201 F.3d at 113; *see also Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986).  The Court may "weigh the evidence on the record accompanying the Rule 12(b)(1) motion, or hold an evidentiary hearing, and decide for itself the merits of the jurisdictional dispute." *Id*.  As to contested issues of jurisdiction, the Court "may examine extraneous evidence submitted with the motion and make any findings of fact necessary to determine the existence of subject matter jurisdiction . . . [and] is not obligated to accord presumptive truthfulness to the allegations of the complaint . . . On a Rule 12(b)(1) motion, the Court need not accept as true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other material outside the pleadings." *In re Alstom SA Securities Litigation*, 406 F. Supp.2d 346, 366 (S.D.N.Y. 2005).

It is universally accepted that "the trustee stands in the shoes of the bankrupt [ ] and has no standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy."   *Wagoner,* 944 F.2d 118 (citing *Caplin v. Marine Midland Grace*

*Trust Co.,* 406 U.S. 416, 429 (1972) (generally, "*Caplin*")); *see* 11 U.S.C. §§ 541, 542).  "It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, *but may only assert claims held by the bankrupt corporation itself.*" *Wagoner,* 944 F.2d at 118. (emphasis supplied).  *Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.),* 336 F.3d 94 (2d Cir. 2003).  "Whether the rights belong to the debtor or the individual creditors is a question of state law."  *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.,* 884 F.2d 688, 700 (2d Cir. 1989);  *see In re Ionosphere Clubs, Inc.,* 17 F.3d 600, 607 (2d Cir. 1994) ("Bankruptcy courts have long been charged with ascertaining under state law, whether claims belong to the bankruptcy estate or to other claimants").

Plaintiff Trustee himself describes the Ittleson Partial Assignment as a *"recovery sharing arrangement"* [BKR Docket No. 458, Exhibit B at ¶ 33 (emphasis added)], literally a judicial admission in court pleadings that the Plaintiff Trustee is pursuing claims on behalf of Ittleson, not just the estate.  This arrangement soundly defeats any claim that Plaintiff Trustee has standing to bring this action for and on behalf of Ittleson and, in any event, only by means of the Ittleson Partial Assignment.  In short, the Plaintiff Trustee is suing for the secured creditor Ittleson.

Within the above context, the Second Circuit (applying Connecticut law) affirmed the grant of dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on the grounds that the trustee in bankruptcy lacked standing to pursue the claims.  *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (1995) (Mahoney, J.).  The *Hirsch* court went further to elaborate on a point of particular relevance to the case before this Court:  "Further, when creditors. . . have a claim for injury that is particularized as to them, they are *exclusively entitled*

to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch,* 72 F.3d at 1093 (emphasis added) (citing *Caplin* and *Wagoner, supra); see Bloor v. Carro, Spanbock, Londin, Rodman & Foss*; 754 F.2d 57 (2d Cir. 1985); *see also Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.) (right to recover for alleged tort committed against creditor by officer of bankrupt corporation belongs to the creditor), *cert. denied*, 479 U.S. 950 (1986); *In re Mediators, Inc.,* 105 F.3d 822, 826 (2d Cir. 1997) ("'[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.'") (citing *Wagoner,* 944 F.2d at 118)).

The affirming decision of the Second Circuit in *Hirsch* (Connecticut law) provides particularly well-tailored guidance to 12(b)(1) dismissal in this case citing other Circuit Court precedents. In *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988), as here, a Chapter 7 Trustee sued the depository bank of a debtor trying to collect on money not owed to the estate or debtor, based on more than 100 assigned investor claims.  As here, the debtor had no claim of its own to press against the bank.   The Circuit Court rejected the suit and ordered dismissal, noting, "[T]he assignments notwithstanding, the investors plainly remain the real parties in interest in these actions.  The Trustee and the estate will recoup only administrative costs from a favorable judgement; the investor assignors receive the bulk of any recovery.  In reality, then, the creditors have assigned their claims only for purposes of bringing suit." *Id.* at 667 (rejecting the trustee's attempt to pursue assigned claims, citing *Caplin*).

Moreover, the Court found the assignments for the Trustee which were, as here, submitted to the Bankruptcy Court *ex parte*, unavailing.  The *Williams* court also cited *In re Ozark Equip. Co.,* 816 F.2d 1222, 1228 (8th Cir. 1988) to reaffirm the applicability of these

principles in a Chapter 7 context, as well as to join in express agreement with the *Ozark* court's

observation that Congress' expressed decision not to overrule *Caplin* is "extremely

noteworthy." *Ozark,* 816 F.2d at 1228. *Williams* held that "no trustee, whether a

reorganization trustee as in *Caplin* or a liquidation trustee[,] has power… under the Code to

assert general causes of action, … on behalf of the bankruptcy estate's creditors." *Id.* (quoting

*Ozark)*.

      Second Circuit precedents on point hold the same.  In *Picard I, supra,* the trustee

pursued multiple lawsuits asserting common law claims against third parties including banks

under a claim that the third parties owed a duty to customers to detect the fraud.   Defendants

moved to dismiss, claiming, among other things, that the trustee lacked standing to assert claims

on behalf of the estate's creditors.  In dismissing for lack of standing and subject matter

jurisdiction, the Court made clear:

> To meet Article III [standing] requirements, the Trustee must
> demonstrate: (i) a concrete and particularized "injury in fact," (ii)
> that can be fairly traced to the defendants' conduct, and (iii) that
> can be redressed by a favorable decision…. Moreover, to satisfy
> "prudential" limitations on standing, "a party must 'assert his own
> legal rights and interests, and cannot rest his claim to relief on the
> legal rights or interests of third parties *Wight v. BankAmerica
> Corp*., 219 F.3d 79, 86 (2d Cir. 2000) (quoting *Warth v. Seldin*, 422
> U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).  Accordingly,
> even though a bankruptcy trustee can seek to recover monies on
> behalf of the debtor's estate that will ultimately be used to help
> satisfy creditors' claims, it is settled law that the federal
> Bankruptcy Code (Title 11, United States Code) does not itself
> confer standing on a bankruptcy trustee to assert claims against
> third parties on behalf of the estate's creditors themselves,
> because the trustee stands in the shoes of the debtor, not the
> creditors. *See Caplin v. Marine Midland Grace Trust Co. of New
> York, 406 U.S. 416, 434, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972).*

454 B.R. at 29.

      Similarly, in *Picard v. JPMorgan Chase & Co*. 460 B.R. 84 (S.D.N.Y. 2011 ) ("*Picard*

*II*"), *aff'd*, 732 F.3d 54 (2d Cr. 2013), *cert. denied*, 134 S.Ct. 2895 (2014), the trustee again  sued

banks, there for various common law claims including, as here, conversion, and aiding and

abetting conversion.   The District Court agreed with *Picard I,* stating "[t]here is no indication in

either the Bankruptcy Code or SIPA that Congress intended to give the Trustee power to pursue

claims that are not the property of the debtor."  460 B.R. at 90.

      Acknowledging the "[t]wo thorough well-reasoned opinions by the district court"

(citing *Picard I* and *Picard II)*, the Second Circuit later affirmed, re-confirming:

> The implied prohibition in Article III against third-party standing
> applies to actions brought by bankruptcy trustees. In *Caplin v.*
> *Marine Midland Grace Trust Co. of N.Y.,* 406 U.S. 416, 92 S. Ct.
> 1678, 32 L. Ed. 2d 195 (1972*)*, the Supreme Court ruled that
> federal bankruptcy law does not empower a trustee to collect
> money owed to creditors.  That is because a bankruptcy trustee
> is not empowered "to collect money not owed to the estate"; the
> trustee's proper task "is simply to collect and reduce to money
> the property of the estates for which (he is trustee)." *Id. at 428-*
> *29* (citation and internal quotation marks omitted). "[N]owhere
> in the statutory scheme is there any suggestion that the trustee
> in reorganization is to assume the responsibility of suing third
> parties" on behalf of creditors. *Id.* at 428. This way, creditors can
> "make their own assessment of the respective advantages and
> disadvantages, not only of litigation, but of various theories of
> litigation," *id.* at 431; no consensus is needed as to "the amount
> of damages to seek, or even on the theory on which to sue," *id.*
> *at 432*; and disputes over inconsistent judgments and the scope
> of settlements can be avoided, *id.* at 431-32.

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC),* 721 F.3d 54, 67 (2d

Cir. 2013), *cert. denied*, 134 S.Ct. 2895 (2014).

      The Plaintiff Trustee's attempt to proceed with the purported Ittleson originated

claims of conversion is misguided.    In this case, the Trustee is trying to take the claim of a secured creditor *against the debtor for money owed by the debtor* and turn it upside down into a claim *for the estate against a third party for money owed to the debtor*.  This, he simply cannot do.  The bulk of any monetary benefit largely remains with the creditor *(i.e.,* there is no absolute assignment for the benefit of the estate).  In addition, the counts in the Complaint are based entirely on the claim which is particular to Ittleson as the Debtor's secured creditor and is in no way generic or of shared significance to any other creditor of the Plaintiff Trustee's estate. Ittleson is the only creditor outsourcing this claim to the Trustee here.  There is no wide group of creditors like Ittleson that stand in the same shoes and that are all benefitting.

Furthermore,  by the express terms of the Ittleson Partial Assignment, Ittleson retains rights in addition to the monetary benefits that afford no benefit to the estate, namely, to prosecute other claims relevant to its proof of claims filed in connection with the bankruptcy proceeding related to this non-core proceeding.  Such is the multiplicity of claims by Plaintiff Trustee, which the United States Supreme Court in *Caplin* found improper for a trustee to pursue*.  See* 406 U.S. at 430, 432 n.21 and 434; *see also E.F. Hutton v. Hadley*, 901 F.2d 979 (11th Cir. 1990) (same).

Plainly stated, Plaintiff Trustee cannot, as a matter of law, carry the burden he has of establishing standing.  *See Hadley*, 901 F.2d at 984; *Hirsch,* 72 F.3d at 1092.  The Complaint must be dismissed with prejudice for this reason alone.

**II.**    **PLAINTIFF'S STATE LAW CLAIMS UNDERMINE RATHER THAN UNDERPIN THE TRUSTEE'S ABILITY TO PURSUE CONVERSION AND SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. "This standard demands 'more than a sheer possibility that a defendant has

acted unlawfully.'" *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (affirming

12(b)(6) dismissal of putative class action alleging unfair trade practice).

   The two-count Complaint against PUB sounds in the single tort of conversion,

plead both at common law as well as under Connecticut's UCC.  Complaint at ¶¶ 47, 51.

Conversion is the *only* basis upon which Plaintiff Trustee attempts to proceed against PUB.  *Id.*

Of note, a claim of conversion, whether statutory or at common law gives rise to a private right

of action.  "[C]onversion is an unauthorized assumption and exercise of the right of ownership

over good belonging to another to the exclusion of the owner's rights."  *Merritt v. Fagan*, 202

WL 13331839, *4 (Conn. Super. 2002); *see Discovery Leasing, Inc. v. Murphy*, 33 Conn. App.

303, 309 (1993); *see also, Kaye v. Bank North*, 2009 WL 1532513 (Conn. Super. 2009)

(conversion claim under the UCC); *Equipment Distributors, Inc., v. Charter Oak Bank & Trust Co.*,

34 Conn. App. 606 (1977).

   Separate from the issue of standing under FED. R. CIV. P. 12(b)(1), there remains

the issue as to whether the Complaint states any viable cause of action for conversion with the

Trustee standing in the shoes of Ittleson.  It does not state a claim for conversion, including by

reason of the Complaint failing to allege and demonstrate what – if any – ownership interest

*Ittleson* had in the three (3) insurance checks made out to Debtor and Debtor's public adjuster

United Adjusters for injury to property and the business resulting from "significant damage to

the property caused by Super Storm Sandy" as endorsed by Debtor and United Adjusters.  *See* Complaint at ¶¶ 21-23.

Measured against such controlling precedent, Plaintiff Trustee's Complaint should be dismissed with prejudice for failure to state a claim, separate from this Court's lack of jurisdiction as set forth, *supra*.

## A. THE COMPLAINT FAILS TO STATE A CLAIM FOR CONVERSION

There are four elements for a common law conversion claim.  "To establish prima facie case of conversion, [Plaintiff] had to demonstrate that (1) the funds . . .  belonged to [Plaintiff], (2) that the defendant deprived [Plaintiff] of its funds for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed [Plaintiff]."  *Discover Leasing, Inc.,* 33 Conn. App. 303 at 309 (citing, *Devitt v. Manulik*, 176 Conn. 657, 660 (1979)).  The Plaintiff Trustee had no specific right in the checks themselves, nor to the funds represented by the three checks listed in the Complaint, and in fact, had not even been appointed in the Debtor's bankruptcy case at the time the checks were issued.  For this reason alone, the Trustee's common law conversion claim fails as a matter of law.  Other jurisdictions are in accord, recognizing the UCC's conversion provisions do not preempt the general principle ensconced by common law that a party can only maintain an action for conversion regarding property that plaintiff owned at the time of the alleged conversion.[5]

---

[5] *See, e.g., Spear v. Wells Fargo Bank, N.A. (In re Bartoni-Corsi Produce),* 130 F.3d 857, 860 (9th Cir. 1997) ("However, the commercial code's conversion provisions do not preempt the general principle of common law conversion that a party can only maintain a conversion action for property that it owns at the time of the alleged conversion.") (citing *Moore v. Regents of Cal.,* 51 Cal. 3d 120, 793 P.2d 479, 488, 271 Cal. Rptr. 146 (Cal. 1990)); *In re Oxford Marketing, Ltd.*, 444 F. Supp. 399, 404-05 (N.D. Ill. 1978) ("Illinois courts do recognize a cause of action for conversion of commercial paper, such as a check, on

In this case, the Complaint does not allege that Ittleson owned the instruments or had rights of ownership.  Importantly, the Trustee and Ittleson are not alleged to ever having possessed the three checks.  He only alleges that Ittleson held a mortgage on the real property and an interest in the proceeds of the Policy. The Complaint muddles Ittleson's claims under the instrument, the mortgage and the Policy.  The fact that Ittleson was a payee on the check is not dispositive of what rights Ittleson may have had in the proceeds of the Policy. IIttleson, as secured creditor of the Debtor cannot claim that the proceeds of the Policy belonged to Ittleson simply by virtue of the mortgage.  *See generally Sav. Bank of Ansonia v. Schancupp*, 108 Conn. 588, 594-595 (Conn. 1928).  To the contrary, the Policy proceeds belonged to the Debtor, subject to whatever lien Ittleson may have had in the proceeds.

In *Burritt Mut. Sav. Bank v. Transamerica Ins. Co.,* 180 Conn. 71 (1980), Chief Justice Peters, a noted UCC scholar and authority prior to her appointment to the Connecticut Supreme Court as well as during her decades long tenure on Connecticut's high court, explained the source of the mortgagee's rights in a casualty property loss proceeds, noting that such ownership rights, if any, would exist by virtue of the terms of the insurance policy, not as a secured creditor under the mortgage:

> The insurance clause that is at issue is a "standard" or "union" mortgage loss payable clause.  This clause, in contradistinction to an "open" loss payable clause, creates a direct contractual relationship between the mortgagee and the insurer.

---

the theory that the intangible right is merged into the specific document.  A party pleading an action in conversion under either common law principles or UCC § 3-419 must allege that it had title to or possession of the check."); *see also Great Lakes Higher Educ. Corp. v. Austin Bank*, 837 F. Supp. 892, 897 (N.D. Ill. 1993).

*Id.* at 75-76 (citing *Savings Bank of Ansonia v. Schancupp, supra*, 108 Conn. 588, 594-95 (1928); *Collinsville Savings Society v. Boston Ins. Co.,* 77 Conn. 676, 680 (1905); and 5A APPLEMAN, INSURANCE LAW AND PRACTICE (Rev. Ed.) § 3401).  The Complaint is woefully deficient because there is no specific factual allegation that supports a claim that Ittleson had an ownership interest in the three checks.

"The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 255 Conn. 20, 43 (2000) (internal quotation marks omitted.).  Thus, "[c]onversion is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm.  The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, *inconsistent with his right of dominion and to his harm*.... The term owner is one of general application and includes one having an interest other than the full legal and beneficial title.... The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right.... It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof."  *Label Systems Corp. v. Aghamohammadi,* 270 Conn. 291, 329 (2004) (emphasis supplied); *see Deming v. Nationwide Mut. Ins. Co.,* 279 Conn. 745, 770-71 (2006).

While money may be the subject of a conversion in appropriate circumstances, s*ee Devitt v. Manulik,* 176 Conn. 657, 662-63 (recovery of money wrongfully taken from joint survivorship bank account); *Dunham v. Cox,* 81 Conn. 268, 270-71 (1908) (recovery of a sum of

money entrusted to the defendant for payment to a third person); *Omar v. Mezvinsky,* 13 Conn.

App. 533, 536, *cert. denied*, 208 Conn. 803 (1988), nonetheless, and of critical importance,

"*[t]he plaintiffs must establish, however, legal ownership or right to possession of specifically*

*identifiable moneys.*" *Deming,* 79 Conn. at 71 (emphasis supplied) (citing *Macomber v.*

*Travelers Property & Casualty Corp.,* 261 Conn. 620, 650 (2002)).  The above-referenced

circumstances of conversion are readily distinguishable with Plaintiff's Complaint pleading an

entirely different, and legally unsupportable, basis for conversion lacking the necessary

representations for a pleading to survive a motion to dismiss.  No such rights are alleged in the

instruments (the checks).

       The Connecticut Supreme Court in *Deming* elaborated in a manner relevant

here:

> In *Macomber,* we cited approvingly case law from other
> jurisdictions setting forth the general rule that, "[a]n action for
> conversion of funds may not be maintained to satisfy a mere
> obligation to pay money.... It must be shown that the money
> claimed, or its equivalent, at all times belonged to the plaintiff
> and that the defendant converted it to his own use." (Internal
> quotation marks omitted.) Id., quoting *National Union Fire Ins.*
> *Co. of Pittsburgh, Pa. v. Wilkins-Lowe & Co.,* 29 F.3d 337, 340
> (7th Cir.1994). Thus, "[t]he requirement that the money be
> identified as a specific chattel does not permit as a subject of
> conversion an indebtedness which may be discharged by the
> payment of money generally.... A mere obligation to pay money
> may not be enforced by a conversion action ... and an action in
> tort is inappropriate where the basis of the suit is a contract,
> either express or implied." (Citations omitted.) *Belford Trucking*
> *Co. v. Zagar,* 243 So.2d 646, 648 (Fla.App.1970). Consistent with
> this rule, in our case law sustaining a cause of action wherein
> money was the subject of the conversion or theft, the plaintiffs
> in those cases at one time had possession of, or legal title to, the
> money. See, e.g., *Devitt v. Manulik,* supra, 176 Conn. at 662-63,
> 410 A.2d 465; *Dunham v. Cox,* supra, 81 Conn. at 270-71, 70 A.
> 1033.

. . .
> Applying this rule to the case at hand, we conclude that the plaintiffs' claims of conversion and theft fail as a matter of law. They have not alleged, nor do they contend in their briefs to this court, that they ever possessed or owned legal title to these funds.

*Id.*, 279 Conn. 772-73.  Even if Ittleson was named as additional insured under the Policy, the Plaintiff Trustee must still establish that the mortgagee's rights in the Policy proceeds prime the rights of the Property owner.  The Trustee's Complaint again misses the mark.  The Trustee only identifies a portion of the Policy, leaving the Complaint facially defective as a matter of law.

### B.  CONNECTICUT LAW DOES NOT RECOGNIZE THE ITTLESON PARTIAL ASSIGNMENT OF INTENTIONAL TORT CLAIMS

Here, the Trustee tries to engineer an assignment of Ittleson's rights *against the Debtor* into rights to instead be asserted *for the Debtor's* estate (and Ittleson) against a third party.  "The ability of someone other than the injured party . . . to bring or intervene in an action against a third party is a clear deviation from the common law." *Dodd v. Middlesex Mut. Assurance Co.,* 242, Conn. 375, 383 (1997) (Katz, J.).  The assignability of claims of injury to property interests, as here, are resolved on the basis of public policy.  *Esposito v. CPM Ins. Serv., Inc.,* 50 Conn. Supp. 283, 294 (2006).

Ranking high in the calculus of public policy concerns *against* the assignability of a chose in tort involving property is the roadblock of a party's role reversal which is clearly seen here.  "[S]uch actions should not be assignable when, as here, the assignment is to an adverse party in the underlying action." *Esposito*, 50 Conn. Supp. at 292 (internal quotations omitted) (citing  *Gurski v. Rosenblum & Filan*, LLC, 276 Conn. 257, 277 (2005) for the proposition that "[t]he expressed policy concern with respect to such assignments is that they 'necessitate a

duplicitous change in the positions taken by the parties in the antecedent litigation.'"); *see also Zuniga v. Groce, Locket & Hebdon*, 878 S.W.2d 313, 318 (Tex. App. 1994) (assignment held invalid by reason of "a demeaning reversal of roles") (cited by *Gurski* in support, *supra*).  In this case, the Trustee's approach and Complaint are, to say the least, duplicitous.[6]

Equally relevant to disregarding the assignment of an intentional tort claim against property is the impact of statutory provisions, where the import of which is to disallow assignment.  *See Dodd*, 242 Conn. at 375 (deferring to Conn. Gen. Stat. § 31-293(a) which specifically permits the assignment in question); *Esposito*, 50 Conn. Supp. at 348.  Connecticut courts also recognize the distinction between the proper assignment of *proceeds* and the improper and offensive assignment of *claims*, the latter which attempts to transfer control over litigation against a defendant such as PUB who is and otherwise always has been uninvolved with the assignee, the Plaintiff Trustee (and the assignor Ittleson for that matter).  *See Kennedy v. Collins Law Firm,* P.C., 1999 WL 1985813, *2 (Conn. Super. 1999) ("In essence, the pertinent factors involve the transfer to the assignee of the right to prosecute and control the action against the underlying tortfeasor, and to retain the recovery therein," allowing a conversion claim because the assignment was for proceeds from the claim rather than control over prosecuting the cause of action for conversion).

The power of public policy is central to the assignability of tort claims against property and specific to the tailored facts of the case under consideration.  *See Esposito,* 50 Conn. Supp. at 350 (referencing "public policy considerations arising from the *peculiar dynamics of the case* pointed" in favor of rendering invalid the attempted assignment of the property tort

---

[6] Tort claims based on personal injury are categorically not assignable.  *Gurski, supra*.

claim at issue) (emphasis supplied).  In sum, here, four factors strongly aggregate to tip public policy considerations decidedly in favor of PUB's motion to dismiss the complaint sounding in tort as an invalid attempt at assignment to Plaintiff Trustee.  <u>First</u>, assignment would result in the precise duplicitous role reversal found to be offensive and unacceptable in the Connecticut and other case law, as the Plaintiff Trustee formerly for the Debtor and adverse to Ittleson would now purport to embrace Ittleson's alleged claims in part on behalf of the Debtor's estate and in part for Ittleson against PUB which Ittelson alone possessed *a fortiori*.  <u>Second</u>, the Ittleson Partial Assignment is an improper assignment of claims not simply proceeds, surrendering to Plaintiff Trustee full command and control over prosecution of claims against PUB.  <u>Third</u>, the Ittleson Partial Assignment here shirks the wrongdoers – the Debtor and its principals and United Adjusters – and instead tries to re-direct a roundabout claim against PUB, who is and otherwise always has been uninvolved with the assignee and assignor and the bankruptcy case proceeding.  <u>Fourth</u>, the Ittleson Partial Assignment of claims runs afoul of statutory bankruptcy provisions which expressly provide that a trustee cannot prosecute the claims of a creditor of the estate such as Ittleson.  *See Williams, supra,* 859 F.2d at 667 ("no trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee[,] has power… under the Code to assert general causes of action, … on behalf of the bankruptcy estate's creditors").

The Trustee in this case has no greater rights than those existing under Connecticut law.  Connecticut law bars the assignment of the intentional tort conversion claims as attempted in the Ittleson Partial Assignment.  The Complaint against PUB should be dismissed accordingly for this reason as well.

**C.  The UCC Does Not Allow Plaintiff Trustee, As Assignee By Purported Assignment or Otherwise To Bring a Conversion Claim Under The UCC and Enforce the Instruments (Checks) at Issue**

The UCC exists as an integrated statutory framework to provide for consistency and uniformity with respect to the law of commercial transactions.  As adopted in Connecticut, it is Article 3, under which the Plaintiff Trustee purports to sue, in particular, which concerns consistent allocation of the rights, liabilities and remedies for the multiple parties involved with negotiable instruments passing through the U.S. banking system in the 50 states.  *See Empire City Capital Corp. v. Citibank, N.A.*, 2011 U.S. Dist. LEXIS 110543 (S.DN.Y. Sept. 28, 2011) (applying Connecticut UCC and holding Conn. Gen. Stat. § 42a-3-420 displaced the plaintiff's common law conversion claim there).

Part 4 of Article 3 of the UCC contains several subsections detailing the liabilities of parties.  Under the UCC, a "party, as distinguished from third party, means a person that has engaged in a transaction or made an agreement subject to [the Uniform Commercial Code]." Conn. Gen. Stat. § 42a-1-201(26).  References to other sections of the UCC further reinforce the carefully constructed mosaic.  Article 3 is predicated on the concept that parties to the transaction have rights and remedies that are set out in the defined parameters of the UCC. There is no suggestion that third parties outside the particular transaction and outside the usual parameters of the UCC can take an assignment of a conversion claim, thus altering the framework for the actual parties to the banking transaction.[7]

The Trustee's Complaint in this case would have this Court violate and

---

[7] For example, under the UCC as adopted by statute in Connecticut, Plaintiff Trustee and Ittleson would not be a "person entitled to enforce" the instruments (*i.e.*, the checks here at issue). Conn. Gen. Stat. § 42a-3-301.

disassemble the carefully designed mosaic of the UCC by accepting a partial assignment of the claims of just one of the parties to the transaction.  Importantly here, the interests of Ittleson and the Plaintiff Trustee are otherwise diametrically opposed as the Debtor's creditor (Ittleson) and the Debtor's representative (Trustee), but now sit merged – partially – in the hands of the Trustee in an effort to conjure up a claim.  This position is squarely at odds with the UCC's carefully constructed allocations.   The Court should reject this attempted alteration of the UCC and find, for this additional reason, that the two conversion claims fail as a matter of law.

**CONCLUSION**

WHEREFORE, defendant People's United Bank, N.A. respectfully requests that

the Motion to Dismiss the Complaint for lack of subject matter jurisdiction, and additionally or

in the alternative for failure to state an actionable claim, be granted with prejudice along with

such other and further relief as this Court deems just and appropriate at law and in equity.


DEFENDANT
PEOPLE'S UNITED BANK, N.A.


By: /s/ Patrick J. McHugh
Patrick J. McHugh (ct14072)
LAW OFFICES OF PATRICK
MCHUGH
2425 Post Road, Suite 205
Southport, CT 06890
Tel: (203) 955-1702
E-mail: pmchugh@patrickmchughlaw.com


-and-


By:  /s/ Thomas J. Farrell
Thomas J. Farrell (ct00861)
HINCKLEY, ALLEN & SNYDER LLP
20 Church St.
Hartford, CT 06103-1221
Tel:  860-331-2770
E-mail:  tfarrell@hinckleyallen.com

**CERTIFICATION**

I hereby certify that on September 18, 2015, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system  or by mail to anyone unable to accept electronic filing. Parties may access this filing through the  Court's system.

/s/ Patrick J. McHugh_____
Patrick J. McHugh (ct14072)
LAW OFFICES OF PATRICK MCHUGH
2425 Post Road, Suite 205
Southport, CT 06890
Tel: (203) 955-1702
pmchugh@patrickmchughlaw.com